IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

DONNA DONAH,

                    Plaintiff,              Civil Action No.
                                            6:03-CV-247 (FJS/DEP)

                              v.

JO ANNE B. BARNHART, Commissioner
of Social Security,
                    Defendant.

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

SCHNEIDER LAW OFFICE                MARK A. SCHNEIDER, ESQ.
57 Court St.
Plattsburgh, NY 12901

FOR DEFENDANT:

HON. GLENN T. SUDDABY               WILLIAM H. PEASE, ESQ.
United States Attorney for the      Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL           BARBARA L. SPIVAK, ESQ.
Social Security Administration      Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                  THOMAS GRABELL, ESQ.
                                    Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Donna Donah, who suffers principally from degenerative disc disease the origin of which she attributes, in part, to having fallen on ice in January of 1999, has commenced this proceeding pursuant to section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), seeking judicial review of an administrative determination denying her application for disability insurance benefits.  Plaintiff maintains that the challenged determination, which is based upon a finding by an administrative law judge ("ALJ") that she is capable of performing the functions of her past relevant work as a receptionist, lacks the support of substantial evidence, having resulted from the improper rejection of both opinions of her treating professionals and her testimony regarding the limitations resulting from her condition.

Having carefully reviewed the record, in the light of plaintiff's arguments, I find that the Commissioner's determination resulted from the application of proper legal standards, and is supported by substantial evidence.  Accordingly, I recommend the entry of judgment on the pleadings dismissing plaintiff's complaint.

I.      BACKGROUND

Plaintiff was born on March 10, 1953; at the time of the hearing in this matter, she was forty-nine years of age.  Administrative Transcript at p. 20.[1]  Plaintiff is married, and resides with her husband in a two story townhouse located in Plattsburgh, New York.  AT 19-22.  Plaintiff is a high school graduate.  AT 20.

On January 7, 1999, while on a lunch break from work, plaintiff slipped and fell on ice, injuring her back and neck.  AT 25, 184.  In the wake of her accident plaintiff has received care from a variety of sources, including principally physicians practicing at the Plattsburgh Health Center ("PHC").  Among the health care professionals at the PHC who have seen the plaintiff are Glenn S. Schroyer, Harpal Singh, M.D., Maureen McShane, M.D. and Anthony Politi, M.D.

Plaintiff first sought treatment at the PHC on January 12, 1999, six days after her accident.  AT 25, 184.  At that time, Ms. Donah reported tenderness over the lumbar spine area, with muscle spasms in the lumbar and thoracic regions.  AT 184.  Upon his examination of the plaintiff, however, Dr. Schroyer reported that she had a full range of cervical motion, normal affect, and normal sensation, muscle size and strength.  *Id.*  Two days later, Dr. Schroyer noted that plaintiff exhibited no

---

[1]      Portions of the administrative transcript (Dkt. No. 8), which was filed by the Commissioner with the agency's answer, will be cited as "AT ___."

tenderness or muscle spasm, with full ranges of spinal motion without elicited pain, and negative straight leg raising signs.  AT 183.  By February 11, 1999, Dr. Schroyer reported that plaintiff was "feeling somewhat better", although she experienced continued pain associated with prolonged standing.  AT 173.

Cervical and thoracic x-rays taken on January 18, 1999 reflected early degenerative changes of the C6-7 cervical disc with "[n]o acute radiographic abnormality" and with vertebral alignment within normal limits.  AT 180-81.  According to a report authored by Dr. Schroyer on February 4, 1999, while plaintiff's x-rays revealed that she experienced scoliosis of the lumbar spine, she nonetheless retained a "full active range of motion."  AT 175.  Based upon his examination, Dr. Schroyer diagnosed plaintiff as suffering from cervical thoracic lumbrosacral back strain, and continued her on "out of work" status for an additional week.  *Id.*

Plaintiff underwent magnetic resonance imaging ("MRI") testing on April 21, 1999, revealing some disc degeneration at L4-5 and L5-S1, though with only slight loss of disc height at L4-L5 and no evidence of stenosis.  AT 218.  In reviewing the results of that MRI testing, J. Hargraves, M.D., a neurosurgeon, noted that they revealed no neural compression.  AT 164.

MRI testing was again conducted on plaintiff's spinal canal in June

4

of 2001 for the purpose of ruling out multiple sclerosis in light of complaints by plaintiff of weakness, fatigue, Raynaud's phenomenon, and paresthesia.[2]  AT 216.  The results of that testing reflected no evidence of spinal cord abnormalities, and only slight disc bulges at three cervical levels, with no accompanying significant encroachment upon neural structures.  AT 216.

Plaintiff's medical records reflect that her treatment regimen has been fairly conservative, with no recommendation for surgical intervention. Plaintiff underwent treatment from North Country Chiropractic at varying frequencies between May 25, 2000 and May 25, 2001.  AT 207.  The medications prescribed over time for the plaintiff to assist her in coping with pain and other effects of her back condition have included Fentanyl, a narcotic analgesic; Valdecoxib, a nonsteroidal anti-inflammatory drug; Hydrocodone with Acetaminophen, an analgesic combination; Methocarbamol, a muscle relaxant; and Zolpiden, a sedative-hynotic drug for treatment for insomnia.  AT 121-25.  According to both the literature associated with those drugs and plaintiff's testimony, they have caused

_____

[2]      Raynaud's phenomenon is described by one authoritative source as intermittent bilateral deficiency of blood, usually due to functional constriction or actual obstruction of a blood vessel, of the fingers, toes, and sometimes ears and nose, with severe pallor and often paresthesia and pain, usually brought on by cold or emotional stimuli and relieved by heat.  Dorland's Illustrated Medical Dictionary 920, 1371, 1534 (29th ed. 2000).

her to experience significant side effects, including dizziness and drowsiness.  *Id.*; *see also* AT 22, 83.

In addition to treating her for back condition at the PHC, plaintiff has been referred to various specialists for recommendations regarding course of treatment.  In an evaluation conducted in October of 1999, upon referral, Alan Moskowitz, M.D., of the Center for Scoliosis and Spine Disorders, noted MRI results reflecting disc degeneration at the L3-L4 and L4-L5 level, with "some mild posterior disc protrusion."  AT 140-41.  Dr. Moskowitz reported, however, that his examination revealed plaintiff was not in acute distress, and appeared to have a full range of motion, noting that "[h]er flexion is really quite good and is full without any pain."  *Id.*  Based upon his examination and evaluation of x-ray and MRI results, Dr. Moskowitz recommended facet injections.  *Id.*

Plaintiff was also examined by John T. Whalen, M.D. of Northeast Orthopaedics, LLP, in Albany, New York in January of 2000, with a return, follow-up visit two months later.  AT 143-47.  While noting plaintiff's subjective complaints of pain, on examination Dr. Whalen characterized her as "a healthy appearing woman in no apparent distress."  AT 147.  Dr. Whalen discerned a good range of motion, with some tenderness, and a normal gait and heel and toe walk bilaterally.  *Id.*  Based upon his examination, Dr. Whalen recommended a conservative course of

6

treatment, finding that "her symptoms seem to be manageable for her."
*Id.*

The plaintiff has also been seen on an occasional, as needed basis by Dr. R.W. Hargraves, a neurosurgeon, beginning in April of 1999.  *See* AT 64, 199-206.  In notes of an examination conducted by Dr. Hargraves on May 4, 1999, it was reported that plaintiff had "improved quite a bit", AT 164, although by May 9, 2001 Dr. Hargraves observed that plaintiff had "gotten a lot worse".  AT 198.  At least as of June of 1999, Dr. Hargraves did not regard the plaintiff as a candidate for surgery based upon the lack of finding of any nerve impingement.  AT 162.  In June of 2001 Dr. Hargraves completed an RFC assessment reflecting plaintiff's ability to lift and carry up to twenty pounds occasionally; to stand and/or walk for two hours in an eight hour day; and to sit for up to six hours in a full work day. AT 202-06.

Upon referral from Dr. Schroyer, plaintiff was also examined on June 12, 2002 by Stanley Grzyb, M.D. of Fletcher Allen Health Care, a facility associated with the University of Vermont.  AT 238-240.  Dr. Grzyb's physical examination revealed no restriction of motion, nor did he find the existence of any gross motor deficits of the upper extremities.  AT 238. Based upon his examination and his review of x-ray and MRI results, Dr. Grzyb found that surgical intervention was not warranted, and suggested

instead a regiment of occupational and physical therapy.  AT 240.

A physical RFC assessment was performed by agency consultant Dr. MacLeod on August 22, 2001.  AT 228-35.  Like Dr. Hargraves, Dr. MacLeod opined that plaintiff is capable of lifting or carrying twenty pounds occasionally and ten pounds frequently, and can sit for six hours in an eight hour work day.  AT 229.  Unlike Dr. Hargraves, however, Dr. MacLeod stated that plaintiff could also stand and/or walk, with normal breaks, for a total of about six hours in an eight hour work day, specifically noting MRI testing results and other clinical findings in the record as supportive of that finding and therefore rejecting plaintiff's subjective statements to the contrary.   AT 229-30, 233.

On July 19, 2001 a report was issued by Dr. Donald T. Kasprzak, an agency consultant who examined the plaintiff.  AT 224-27.  Based upon his examination, Dr. Kasprzak diagnosed the plaintiff as suffering from chronic back pain, secondary to disc degenerative disease and from neck pain, possibly secondary to minimal disc bulges in the cervical areas.  *Id.* Dr. Kasprzak noted her recounting of the various daily activities which she was capable of engaging in, and indicated that she moves about "quite freely."  AT 225-26.  Dr. Kasprzak found that plaintiff's ranges of motion were all normal, with no loss of strength, and discerned no muscle atrophy or sensory loss.  *Id.*

II.    PROCEDURAL HISTORY

A.    Proceedings Before The Agency

Plaintiff filed an application for disability insurance benefits on June 1, 2001, alleging a disability onset date of March 4, 1999.[3]  AT 67-69. That application was denied on August 23, 2001.  AT 45-49.

At plaintiff's request, a hearing was held by ALJ Thomas P. Zolezzi on September 17, 2002 to address her challenge to the denial of benefits. AT 16-43.  At the conclusion of that hearing, during which plaintiff was represented by counsel, ALJ Zolezzi issued a determination dated November 20, 2002, finding that plaintiff was not disabled under the relevant standards.  AT 7-15.  In that decision, ALJ Zolezzi initially found the existence of physical impairment, in the form of degenerative disc disease in the lumbar spine and minimal disc bulges in the cervical spine area, of sufficient severity to satisfy the requirements at step two of the relevant inquiry, but concluded that the physical impairment did not meet or equal any of the listed, presumptively disabling conditions set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.[4]  AT 11-

_____

[3]    An earlier disability application filed by the plaintiff on February 17, 2000 was denied initially on June 7, 2000.  See AT 10.  Plaintiff took no steps to seek reconsideration or further review of that determination.  Id.

[4]    In his decision, ALJ Zolezzi also noted plaintiff's history of treatment for Raynaud's phenomenon and depression, but found that neither of those conditions was

9

12.

Proceeding to step four of the familiar, five part sequential disability test, the ALJ assessed plaintiff's residual functional capacity ("RFC"), finding that at the relevant times she retained the capability to perform a full range of light work.[5]  Applying that RFC finding to the responsibilities associated with plaintiff's past relevant work, the ALJ concluded that while she would not be able to return to her position as a bank teller, she nonetheless was capable of performing in her prior position as a receptionist, where "she would sit all day and [use] a computer."  AT 13.  In arriving at that conclusion the ALJ rejected plaintiff's subjective

_____

sufficiently severe for purposes of the disability analysis.  AT 11.  Plaintiff does not challenge this portion of the ALJ's determination.

[5]     By regulation, light work is defined as follows:

> Light work involves lifting no more than 20
> pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very
> little, a job is in this category when it requires
> a good deal of walking or standing, or when it
> involves sitting most of the time with some
> pushing and pulling of arm or leg controls.  To
> be considered capable of performing a full or
> wide range of light work, you must have the
> ability to do substantially all of these activities.
> If someone can do light work, we determine
> that he or she can also do sedentary work,
> unless there are additional limiting factors
> such as loss of fine dexterity or inability to sit
> for long periods of time.

20 C.F.R. § 404.1567(b).

testimony regarding the limitations experienced as a result of her condition.  AT 13-14.  Based upon that finding the ALJ concluded that a finding of no disability was warranted, and thus did not proceed to step five of the requisite test.  AT 14.

The ALJ's opinion became a final determination of the agency when, on February 11, 2003, the Social Security Administration Appeals Council denied plaintiff's request for review of that decision.[6]  AT 3-4.

B.   This Action

Plaintiff commenced this action on February 27, 2003.  Dkt. No. 1. Issue was thereafter joined by the defendant's filing of an answer, accompanied by an administrative transcript of proceedings and evidence before the agency, on June 3, 2003.  Dkt. Nos. 7, 8.  With the filing on July 17, 2003 of plaintiff's brief, Dkt. No. 10, and a brief on behalf of the Commissioner on September 9, 2003, Dkt. No. 11, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[7]

---

[6]    In that determination the Appeals Council did examine the record in light of new regulations, effective February 19, 2002, pertaining to listings for musculoskeletal (and related) impairments, but concluded that they did not alter the analysis applicable to plaintiff's case.  AT 3.

[7]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the

III.   DISCUSSION

A.   Standard of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a

---

Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13

F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §

405(g).

The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more

than a mere scintilla'" of evidence scattered throughout the administrative

record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To

determine on appeal whether an ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record,

examining the evidence from both sides, because an analysis of the

substantiality of the evidence must also include that which detracts from

its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v.

NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards

have been applied, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed.  42

U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the

court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to

develop a full and fair record or to explain his or her reasoning.  *Martone*,

70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.

1980)).  A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be

considered at the agency level.  *See Lisa v. Secretary of Dep't of Health*

*and Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal

without remand, while unusual, is appropriate when there is "persuasive

proof of disability" in the record and it would serve no useful purpose to

remand the matter for further proceedings before the agency.  *Parker*, 626

F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49,

57 (2d Cir. 1992); *Carroll v. Secretary of Health and Human Servs.*, 705

F.2d 638, 644 (2d Cir. 1983).

    B.    <u>Disability Determination - The Five Step Evaluation Process</u>

    The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

 In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments
> [must be] of such severity that he is not only unable
> to do his previous work but cannot, considering his
> age, education, and work experience, engage in
> any other kind of substantial gainful work which
> exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp.2d at

149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20

C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's residual functional capacity ("RFC")

precludes the performance of his or her past relevant work.  20 C.F.R. §§

404.1520(e), 416.920(e).  If it is determined that it does, then as a final

matter the agency must examine whether the claimant can do any other

work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

C.    The Evidence In This Case

In her brief plaintiff essentially raises three arguments, contending

that 1) the ALJ's finding resulted in part from the unexplained and

improper rejection of opinions rendered by various of her treating sources;

2) in finding no disability the ALJ improperly rejected, without adequate

16

basis or proper explanation, her subjective pain complaints; and 3) the finding that she retains the RFC to perform her past relevant work is not supported by substantial evidence and the Commissioner thus should have been required to present evidence from a vocational expert to satisfy her burden at step five of the relevant test.

1.    The ALJ's RFC Determination

The lynchpin of the ALJ's finding of no disability is his determination of plaintiff's RFC, and specifically that she is capable of performing her past relevant work as a receptionist.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  Id.; Martone, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; see also 20 C.F.R. Part 404, Subpt. P, App. 2 §

200.00(e).  When making an RFC determination, an ALJ must specify

those functions which the claimant is capable of performing; conclusory

statements concerning his or her capabilities, however, will not suffice.

*Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587).  An

administrative RFC finding can withstand judicial scrutiny only if there is

substantial evidence in the record to support each requirement listed in

the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*,

737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp.

300, 309-10 (E.D.N.Y. 1997).

     In support of her challenge to the ALJ's determination, plaintiff

asserts that in formulating a proper RFC to be attributed to her

circumstances, the ALJ should have considered her pain as a non-

exertional limitation.  Pain, in and of itself, is not a limitation, but rather a

symptom which can be associated with limiting RFC factors.  *Pinkerton v.*

*Barnhart*, No. 03-1038, 2003 WL 23112348, at *5 (D. Kan. Dec. 9, 2003);

Policy Interpretation Ruling Titles II and XVI: Assessing Residual

Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 (S.S.A.

July 2, 1996).  In this instance plaintiff contends that because of her pain

she is unable to sit continuously, as required by the receptionist position.

As the Second Circuit has noted, however, "[t]he regulations do not

mandate that all sedentary jobs in the United States require the worker to

18

sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). The limitations associated with the pain experienced by the plaintiff thus do not necessarily preclude her ability to work in her former position as a receptionist.

At step four of the sequential analysis, which focuses upon a claimant's ability to perform his or her past work, it is the claimant who bears on the burden of proof. *Perez*, 77 F.3d at 46; *Diaz v. Shalala,* 59 F.3d 307, 315 (2d Cir. 1995). In this instance plaintiff has failed to carry that burden of showing that because of the pain which she experiences, she is unable to fulfill the responsibilities of her past relevant work as a receptionist.

### 2.   Treating Physician

Rejecting a marginally more restrictive RFC prepared by plaintiff's neurosurgeon, Dr. Hargraves, *see* AT202-06, as well as a letter from another treating source, Dr. Schroyer, suggesting greater limitations, *see* AT 241, ALJ Zolezzi concluded that plaintiff maintains the RFC to perform her past relevant work as a receptionist. AT 13. Plaintiff described that work as requiring her to sit up to seven hours and to walk less than one hour, and to lift up to twenty pounds occasionally and ten pounds frequently. AT 94. In arriving at that determination the ALJ rejected some

though not all, of Dr. Hargraves' specific RFC findings set forth in his assessment, completed on June 18, 2001, to the effect that plaintiff is only able to lift and carry only twenty pounds occasionally, to stand and/or walk less than two hours per day, and to sit less than six hours per day, with limited pushing and pulling, as inconsistent with his own treating notes as well as other clinical evidence in the record.  AT 12; *see* AT 202-06.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.[8]  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling, however, if contrary to other substantial evidence in the record.  *Veino*,

---

[8]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Id.*

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  See *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

As was previously noted, the RFC assessment of plaintiff's treating neurosurgeon, Dr. Hargraves, is not sharply in conflict with the RFC determination of ALJ Zolezzi.  In any event, the ALJ's rejection of that RFC finding is well supported, and his findings are consistent with the conclusions of a state agency consultant.  *See* AT 228-35.

Plaintiff also challenges the ALJ's rejection of opinions from certain

21

other treating sources, including that of Dr. Schroyer, who stated, *inter alia*, that plaintiff's "injuries have resulted in a moderate to marked degree of disability and that this disability is permanent", going on to state "I do not see how she could undertake any type of gainful employment."  AT 241.  The opinion of a physician on the ultimate issue of disability is one reserved for the Commissioner, and consequently, a treating source's opinion on that ultimate issue is not binding.  20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  Dr. Schroyer's conclusory statements regarding plaintiff's inability to work are thus not entitled to deference.

Plaintiff also relies, in part, upon opinions from Dr. Mulholland, a chiropractor, who reported that "the patient's subjective complaints have consistently matched our objective findings."[9]  AT 207.  An ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all the evidence before him or her, since a chiropractor's opinion is not subject to the treating physician rule.  *Diaz*, 59 F.3d at 313-14; *Toro v. Chater*, 937 F.Supp. 1083, 1091-92 (S.D.N.Y. 1996).  In order to be given controlling weight under the treating physician rule, a treating source's opinion must be a "medical opinion".  20 C.F.R. § 404.1527; *Diaz*,

---

[9]    In light of the lack of evidence regarding either those objective findings or the extent of the patient's subjective complaints recounted by her to Dr. Mulholland, this statement in lacking in context.

59 F.3d at 313; *Toro*, 937 F. Supp. at 1091-92.  Under the regulations, a

chiropractor is not an "acceptable medical source" qualified to give a

medical opinion.  *Diaz*, 59 F.3d at 313 (discussing 20 C.F.R. §§

404.1513(a) and (e)); *Toro*, 937 F. Supp. at 1091-92.  Since a chiropractor

cannot provide a medical opinion, chiropractor's opinions are not subject

to the treating physician rule, and consequently there is no "hard and fast

rule" governing the weight which an ALJ must give a chiropractor's

opinion.  *Diaz*, 59 F.3d at 314 n. 8; *Toro*, 937 F. Supp. at 1091-92 (citing

*Diaz*).

       This is not to say that such evidence is meaningless.  Indeed, the

regulations themselves provide that a chiropractor's opinion should be

considered for the purpose of assisting the ALJ in understanding how a

claimant's impairment affects his or her ability to work.  *Chandler v.

Callahan*, No. 96-CV-1790, 1998 WL 99384, at *5 (N.D.N.Y. Feb. 23,

1998) (Pooler, J. & DiBianco, M.J.) (citing 20 C.F.R. §§ 404.1513(e)(3),

416.913(e)(3)).  In this instance, however, Dr. Mulholland's letter is

distinctly lacking in any specifics regarding objectively verifiable

limitations associated with plaintiff's chronic back condition.  Because the

evidence presented regarding Dr. Mulholland's opinion does not set forth

objective findings, the ALJ's failure to give it consideration was not

improper.

Having carefully reviewed the ALJ's determination and the record, in light of plaintiff's arguments, I am unable to conclude that opinions from treating sources contradictory to the ALJ's determination were improperly discounted. For the most part, the opinions referred to by the plaintiff in that portion of her brief addressing treating sources reflect subjective complaints voiced by the plaintiff to those treating care providers. When compared to objective, clinical findings in the record, the ALJ's RFC conclusions are not materially conflicting. To the extent that contrary, treating opinions were rejected, the ALJ's reasons for doing so are both adequately stated and well supported.

### 3.   Subjective Complaints

In her hearing testimony, plaintiff stated that she suffers from daily back pain as well as the side effects experienced from the medications taken to address her back. *E.g.*, AT 22. Plaintiff testified that as a result of her pain she is unable to walk for long periods, cannot drive more than fifteen to twenty minutes, is unable to stand, and cannot lift the twenty-five pound cash drawers required as a bank teller. AT 23. Significantly, plaintiff testified that she is unable to work as a receptionist because of the pain which she experiences, stating that she cannot sit in one position. AT 24. In arriving at his finding of no disability, ALJ Zolezzi discounted these subjective complaints based in large part upon the lack of clinical

24

evidence to substantiate the pain, and the extent of her daily activities,

noting that the receptionist position is basically sedentary in nature.  AT

13-14.

An ALJ must take into account subjective complaints of pain in

making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d),

416.929(a), (d).  When examining the issue of pain, however, the ALJ is

not required to blindly accept the subjective testimony of a claimant.

*Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective

testimony, including testimony concerning pain*.  See Mimms v. Heckler*,

750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that

discretion the ALJ must consider a variety of factors which ordinarily would

be relevant on the issue of credibility in any context, including the

claimant's credibility, his or her motivation, and the medical evidence in

the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL

59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.)

(citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an

independent judgment concerning the actual extent of pain suffered and

its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[10]  *Barnett*, 13 F. Supp.2d at 316; *see also*

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony

concerning the intensity, persistence or functional limitations associated

with his or her pain is not fully supported by clinical evidence, however,

then the ALJ must consider additional factors in order to assess that

testimony, including: 1) daily activities; 2) location, duration, frequency and

intensity of any symptoms; 3) precipitating and aggravating factors; 4)

type, dosage, effectiveness and side effects of any medications taken; 5)

other treatment received; and 6) other measures taken to relieve

symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

    After considering plaintiff's subjective testimony, the objective

medical evidence, and any other factors deemed relevant, the ALJ may

accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d

at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such

testimony is rejected, however, the ALJ must explicitly state the basis for

doing so with sufficient particularity to enable a reviewing court to

determine whether those reasons for disbelief were legitimate, and

---

[10]    In the Act, Congress has specified that a claimant will not be viewed as
disabled unless he or she supplies medical or other evidence establishing the
existence of a medical impairment which would reasonably be expected to produce the
pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

whether the determination is supported by substantial evidence. *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Secretary, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of her back condition.  The fact that she suffers from discomfort, however, does not automatically qualify her as disabled, since "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

The ALJ's rejection of plaintiff's subjective complaints is well supported by substantial evidence in the record.  The medical evidence reflects the lack of muscle atrophy, sensory changes, or muscle weakness.  The ALJ was thus required to review other relevant information. *See* 20 C.F.R. § 404.1529(c)(3).  In this instance the ALJ specifically considered the relatively minimal treatment of the plaintiff prior to the hearing, as well as her testimony regarding daily activities.  AT 22-23.  Plaintiff testified during the hearing that she is able to cook, perform housework, climb stairs, make beds, vacuum, grocery shop, clean bathrooms, and do laundry, although with occasional assistance from her

husband.  AT 31-33.  The ALJ's rejection of plaintiff's pain complaints is also supported by plaintiff's statements to her treating physicians regarding her pain, she having reported at various times that her occasional pain was improving, AT 170; that the pain was brought on or aggravated by exercise, intercourse, and heavy lifting or moving of furniture, AT 159; and that the pain is tolerable with restrictions on activity, AT 140.[11]

Given these indications in the record, I find that plaintiff's subjective pain complaints were properly discounted, and that the reasons for their rejection were adequately explained by the ALJ.

IV.   SUMMARY AND RECOMMENDATION

_____Plaintiff undoubtedly suffers from the residual effects of slipping and falling on ice, including back and neck pain and spasms.  When considering the impact of those limitations associated with her condition upon the ability to work in her former position as a receptionist, the court must consider that it is plaintiff who bears the burden of demonstrating an inability to perform her past relevant work.  *Diaz*, 59 F.3d at 315.  In this instance, plaintiff contends that she is unable to perform her past relevant work based upon an inability to sit for six hours or more continuously as

_____

[11]     In October of 1999 plaintiff reported that she could walk for up to one hour at a time, and could sit indefinitely provided she utilized a "special chair".  AT 140.

would be required for that position.  In this instance the ALJ's determination that plaintiff is capable, notwithstanding her limitations, of performing her past relevant work as a receptionist is supported by substantial evidence, and his rejection of any slightly contrary opinions of plaintiff's treating physicians and her complaints of debilitating pain are both well supported, and adequately explained.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion for judgment on the pleadings be GRANTED, the Commissioner's finding of no disability affirmed, and plaintiff's complaint dismissed in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties by regular mail.


Dated:     February 10, 2006
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\socialsecurity\donah.wpd