**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONNA DONAH,**

                                        **Plaintiff**


                        v.                                        **6:03-CV-247**
                                                                      **(FJS/DEP)**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**


                                        **Defendant.**

_____

**APPEARANCES**                          **OF COUNSEL**

**SCHNEIDER LAW OFFICE**                  **MARK A. SCHNEIDER, ESQ.**
57 Court Street
Plattsburgh, New York 12901
Attorneys for Plaintiff

**OFFICE OF THE UNITED**                  **WILLIAM H. PEASE, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On January 7, 1999, Plaintiff fell on ice while on a lunch break from work as a bank

teller.  She injured her back and neck.  On June 1, 2001, Plaintiff filed an application for

disability insurance benefits, alleging a disability onset date of March 4, 1999.[1]  The

_____

[1] The current application is Plaintiff's second.  She filed her first disability application on
(continued...)

Commissioner denied that application on August 23, 2001.

At Plaintiff's request, Administrate Law Judge ("ALJ") Thomas P. Zolezzi heard Plaintiff's challenge to the denial of benefits on September 17, 2002. At the conclusion of the hearing, at which counsel represented Plaintiff, ALJ Zolezzi issued a determination dated November 20, 2002, finding that Plaintiff was not disabled. On February 11, 2003, the Social Security Administration Appeals Council denied Plaintiff's request for review of that decision.

Plaintiff commenced this action on February 27, 2003. On February 10, 2006, Magistrate Judge Peebles issued his Report and Recommendation, in which he recommended that this Court affirm the Commissioner's finding of no disability and dismiss Plaintiff's Complaint. Currently before the Court are Plaintiff's objections to Magistrate Judge Peebles' Report and Recommendation.

## II. BACKGROUND

A.      **Plaintiff's treatment**[2]

Following her injury, Plaintiff sought treatment at the Plattsburgh Health Center on January 12, 1999, six days after her fall. At that time, she reported tenderness in the lumbar spine area, with muscle spasms in the lumbar and thoracic regions. Dr. Glenn S. Schroyer

---

[1](...continued)
February 17, 2000, which the Commissioner denied on June 7, 2000. Plaintiff did not seek reconsideration or further review of that determination.

[2] This section contains a summary of the voluminous medical evidence in this case. A complete record of Plaintiff's treatment can be found in the Administrative Transcript.

examined Plaintiff and reported that she had a full range of cervical motion, normal affect, normal sensation, and normal muscle size and strength. Two days later, Dr. Schroyer noted that Plaintiff showed no tenderness or muscle spasms and had a full range of spinal motion without elicited pain. He also noted that Plaintiff had negative straight leg raising signs and reported that Plaintiff was "'feeling somewhat better,'" although she experienced continued pain associated with prolonged standing.

On January 18, 1999, Plaintiff had cervical and thoracic x-rays taken, which showed early degenerative changes of the C6-7 cervical disc but no acute abnormality. The x-rays also showed normal vertebral alignment. Dr. Schroyer's report indicated that, as of February 4, 1999, Plaintiff had scoliosis of the lumbar spine but retained a full active range of motion. Based upon this examination, Dr. Schroyer diagnosed Plaintiff with cervical thoracic lumbrosacral back strain and continued her out-of-work status for an additional week.

On April 21, 1999, Plaintiff underwent magnetic resonance imaging ("MRI"). The MRI revealed some disc degeneration at L4-5 and L5-S1, but it only showed slight loss of disc height at L4-L5. The MRI showed no evidence of stenosis. Dr. R.W. Hargraves, a neurosurgeon, reviewed the MRI and determined that it showed no neural compression.

During June of 2001, Plaintiff again underwent MRI testing for the purpose of ruling out multiple sclerosis due to Plaintiff's complaints of weakness, fatigue, Raynaud's phenomenon, and paresthesia. The test revealed no spinal cord abnormalities, slight disc bulges at three cervical levels, and no accompanying significant encroachment upon neural structures.

In addition to treatment at the Plattsburgh Health Center, Plaintiff also visited North Country Chiropractic from May 25, 2000, to May 25, 2001. There, she obtained prescriptions

for pain and other effects of her back condition, including Fentanyl, a narcotic analgesic; Valdecoxib, a nonsteroidal anti-inflammatory drug; Hydrocodone with Acetaminophen, an analgesic combination; Methocarbomal, a muscle relaxant; and Zolpiden, a sedative-hypnotic used to treat insomnia.  Plaintiff reported significant side effects including dizziness and drowsiness.

Plaintiff also saw various specialists.  In October of 1999, Dr. Alan Moskowitz, of the Center for Scoliosis and Spine Disorders, noted that MRI testing showed disc degeneration at the L3-L4 and L4-L5 level, with mild posterior disc protrusion.  However, he reported that Plaintiff was not in acute distress, appeared to have a full range of motion, and stated that "[h]er flexion is really quite good and is full without any pain."  Dr. Moskowitz recommended facet injections as treatment.

In January of 2000, Plaintiff saw Dr. John T. Whalen, of Northeast Orthopaedics, LLP, in Albany, New York.  Plaintiff had a follow-up visit two months later.  Noting Plaintiff's complaints of pain, Dr. Whalen characterized her as "a healthy appearing woman in no apparent distress."  Dr. Whalen reported a good range of motion, some tenderness, and a normal gait and heal-to-toe walk bilaterally.  Moreover, Dr. Whalen found Plaintiff's symptoms manageable and recommended a conservative course of treatment.

Dr. R.W. Hargraves, the neurosurgeon mentioned above, also saw Plaintiff on an occasional basis beginning in April of 1999.  On May 4, 1999, he reported that Plaintiff's condition had improved "quite a bit," but by May 9, 2001, he observed that it had "gotten a lot worse."  As of June of 1999, Dr. Hargraves did not consider Plaintiff a candidate for surgery because he found no nerve impingement.  In June of 2001, Dr. Hargraves completed a residual

-4-

functional capacity ("RFC") assessment, which indicated that Plaintiff had the ability to lift and carry up to twenty pounds occasionally, to stand and/or walk for two hours in an eight-hour day, and to sit for less than six hours.[3]

Dr. Stanley Grzyb, of Fletcher Allen Health Care, also examined Plaintiff on June 12, 2002.  He found that Plaintiff's motion was not restricted and that Plaintiff lacked gross motor deficits in the upper extremities.  Additionally, he found that surgery was not needed and suggested a regimen of occupational and physical therapy.

Agency consultants also assessed Plaintiff's condition.  On July 19, 2001, Dr. Donald T. Kasprzak issued a report based on his examination of Plaintiff.  He diagnosed Plaintiff as suffering from chronic back pain, secondary to disc degenerative disease, and from neck pain, possibly secondary to minimal disc bulges in the cervical areas.  Dr. Kasprzak noted that Plaintiff stated that she moved about "quite freely" and recounted the various daily activities that she was capable of engaging in.  Dr. Kasprzak found that Plaintiff had normal ranges of motion, no loss of strength, and no muscle atrophy or sensory loss.

On August 22, 2001, Dr. MacLeod, another agency consultant, performed a physical RFC assessment.  He determined that Plaintiff was capable of lifting or carrying twenty pounds occasionally and ten pounds frequently.  Dr. MacLeod also found that Plaintiff could sit for six hours in an eight-hour work day.  Furthermore, Dr. MacLeod stated that Plaintiff could stand or

---

[3] Plaintiff objects to Magistrate Judge Peebles' finding that Dr. Hargraves' assessment stated that Plaintiff could sit for up to six hours.  She states that Dr. Hargraves checked the box for "less than six hours a day" on his assessment.  Although Plaintiff is correct, *see* Administrative Transcript at 205, she fails to note that, in the analysis section of the Report and Recommendation, Magistrate Judge Peebles correctly phrased Dr. Hargraves' assessment, *see* Dkt. No. 13 at 20.  This matter is discussed more fully, *infra*.

walk, with normal breaks, for a total of approximately six hours in an eight-hour work day. Noting that MRI results and other clinical findings in the record support this opinion, Dr. MacLeod rejected Plaintiff's subjective statements to the contrary.

### B.      Procedural history

As noted above, in a determination dated November 20, 2002, ALJ Zolezzi found that Plaintiff was not disabled.  In that decision, he found the existence of a physical impairment – degenerative disc disease in the lumbar spine and minimal disc bulges in the cervical spine area – sufficient to satisfy the second step of the disability inquiry but concluded that the physical impairment did not meet any of the presumptively disabling conditions set forth in the governing regulations.  ALJ Zolezzi also evaluated Plaintiff's RFC and found that she retained the capability to perform a full range of light work.  Although he concluded that Plaintiff would not be able to return to her position as a bank teller because it required lifting twenty-five pounds, he determined that she was capable of performing in her prior position as a receptionist.  In arriving at his decision, ALJ Zolezzi rejected Plaintiff's subjective testimony regarding her limitations, including debilitating pain.  In addition, he did not give controlling weight to the opinions of Dr. Schroyer and Dr. Hargraves.  Finding no disability at this stage, he did not proceed to step five of the requisite test.

In his Report and Recommendation, Magistrate Judge Peebles found that "the ALJ's determination that plaintiff is capable, notwithstanding her limitations, of performing her past relevant work as a receptionist is supported by substantial evidence, and his rejection of any slightly contrary opinions of plaintiff's treating physicians and her complaints of debilitating

-6-

pain are both well supported, and adequately explained." *See* Dkt. No. 13 at 29. Magistrate

Judge Peebles found that Plaintiff failed to meet her burden in the RFC assessment because she

did not establish that "[t]he limitations associated with [her] pain . . . necessarily preclude her

ability to work in her former position as a receptionist." *See id.* at 19. Moreover, he affirmed

ALJ Zolezzi's partial rejection of Dr. Hargraves' RFC assessment, noting that the ALJ's

decision was "well supported" and "consistent with the conclusions of a state agency

consultant."[4] Finally, Magistrate Judge Peebles found that the ALJ's rejection of Plaintiff's

subjective pain complaints was supported by substantial medical evidence showing a lack of

muscle atrophy, sensory changes, or muscle weakness. Specifically, Magistrate Judge Peebles

noted that Plaintiff testified that she could cook, clean, shop, and perform other life activities

with occasional assistance. He also noted that Plaintiff had received little treatment prior to her

disability hearing. Plaintiff had also testified that, at various times, her pain was improving and

that the pain commenced or increased with exercise, intercourse, and heavy lifting or moving of

furniture. Otherwise, Plaintiff's pain was tolerable with activity restrictions. *See id.* at 28.


## III. DISCUSSION

### A.    Standard of review

        When the plaintiff has filed objections, the court must engage in a *de novo* review of the

---

        [4] Specifically, ALJ Zolezzi rejected, and Magistrate Judge Homer affirmed, Dr.
Hargraves' June 18, 2001 RFC assessment findings "that plaintiff is only able to lift and carry
only twenty pounds occasionally, to stand and/or walk less than two hours per day, and to sit less
than six hours per day, with limited pushing and pulling." *See* Dkt. No. 13 at 10. ALJ Zolezzi
noted that these findings were "inconsistent with [Dr. Hargraves'] own treating notes as well as
other clinical evidence in the record." *See id.*

relevant portions of the Report and Recommendation. *See Searcy v. Comm'r of Soc. Sec.*, 103 F. Supp. 2d 120, 121 (N.D.N.Y. 2000) (quotation omitted). In general, a court's review of the Commissioner's final decision is limited to whether she applied the correct legal standards and whether substantial evidence supports the decision. *See id.* at 123 (citation omitted). Although the Commissioner is ultimately responsible for determining a claimant's disability eligibility, the ALJ makes the actual determination. Therefore, a court reviews the ALJ's decision on appeal.

A court cannot affirm the ALJ's decision if it reasonably doubts that the ALJ applied the proper legal standards, even if it appears that substantial evidence supports the decision. *See id.* (citation omitted). In addition, the ALJ must set forth the essential factors justifying her findings with sufficient specificity so that a court can determine whether substantial evidence supports this decision. *See id.* (citation omitted). Substantial evidence exists when relevant evidence is present such that a reasonable mind might accept it as adequate to support the decision. *See id.* (quotation omitted). There must be "'more than a mere scintilla'" of evidence in the administrative record. *Id.* (quotation and other citation omitted). Therefore, a reviewing court considers the entire record and examines the evidence from both sides; however, it cannot substitute its interpretation of the record if substantial evidence supports the ALJ's decision. *See id.* at 124 (quotation and other citations omitted).

**B.   Five-step disability determination**

A plaintiff is disabled if she establishes that she cannot "'engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months . . . .'" *Sinda v. Comm'r of Soc. Sec.*, No. 6:00-CV-0558, 2004 WL 1305882, *9 (N.D.N.Y. June 8, 2004) (quotations and footnote omitted).  In making her disability determination, the ALJ uses a five-step process.  First, she considers whether the claimant is presently engaged in substantial gainful activity.  If so, the claimant is not disabled.  Second, the ALJ determines whether the claimant has a severe impairment.  Third, if the claimant has a severe impairment, the ALJ determines whether the impairment meets or equals an impairment listed in the applicable regulations.  If the impairment meets this standard, the claimant is presumptively disabled.  Fourth, if the claimant is not presumptively disabled, the ALJ considers whether the claimant's RFC precludes the performance of her past relevant work.  Fifth, if necessary, the ALJ determines whether the claimant can do any other work.  *See id.* (citations omitted).

The claimant has the burden of establishing that she cannot perform her past relevant work; however, once she meets this burden, the ALJ can deny benefits only by showing that the claimant can perform some less demanding work.  *See id.* (citations omitted).  The ALJ must specifically reference medical evidence.  *See id.* (citations omitted).  In doing so, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills to evaluate whether she can perform alternative work in the national economy.  *See id.* (citations omitted).

### C.  Plaintiff's objections

Plaintiff makes nine objections to Magistrate Judge Peebles' Report and Recommendation: (1) he applied the wrong standard of review; (2) he incorrectly rejected the

-9-

treating physicians' determination that Plaintiff could not work; (3) he incorrectly concluded that Plaintiff was not a credible witness; (4) he failed to consider Plaintiff's disabilities in combination, including her nonexertional limitation of pain; (5) he erred in determining that Plaintiff could perform her past work as a receptionist; (6) he failed to discuss and consider the full medical record; (7) he failed to consider the side effects of Plaintiff's narcotic pain medication on her ability to work; (8) he erroneously found that Dr. Hargraves opined that Plaintiff could "sit for up to six hours in a full work day;" and (9) he incorrectly concluded that the Commissioner's decision was supported by substantial evidence on the record.

### 1. *Objection 1: standard of review*

Plaintiff asserts that Magistrate Judge Peebles applied the wrong standard of review in finding that the Commissioner's decision was supported by substantial evidence. *See* Dkt. No. 14 at 2. She states that this standard does not apply to the Commissioner's conclusions of law and that the Commissioner applied incorrect legal standards. *See id.* at 2-3.

Magistrate Judge Peebles applied the standard of review noted above: he evaluated whether the ALJ applied the correct legal standards and whether substantial evidence supported the ALJ's decision. Moreover, Plaintiff does not specify which legal standards were incorrect but merely refers to her other objections. *See id.* at 3. Accordingly, the Court denies Plaintiff's first objection.

### 2. *Objection 2: treating physicians*

Plaintiff asserts that Magistrate Judge Peebles and the Commissioner failed to give the proper weight to the treating physicians.  First, she states that Dr. Hargraves opined that she was limited to sitting for fewer than six hours per day based on his ongoing treatment of her, physical examinations, and MRI reports.  Second, she asserts that Dr. Schroyer, her primary care physician, opined that she had moderate to marked permanent disability and could not perform any work based on his examinations of her and her radiological reports.  Third, Plaintiff asserts that Dr. Mulholland determined that her subjective complaints of pain have consistently matched his objective findings.  Plaintiff states that Dr. Mulholland treated her two to five times per month during a one-year period.  Fourth, Plaintiff asserts that Dr. Whalen determined that she was "quite limited" due to lumbar degenerative disc disease and that fusion might help her.  In conclusion, Plaintiff contends that Magistrate Judge Peebles and Commissioner Barnhart substituted their own medical opinions for those of the treating physicians.

The opinions of treating physicians are generally given controlling weight due to the belief that an on-going doctor-patient relationship yields a better evaluation than a one-time physical.  *See Sinda*, 2004 WL 135882, at *10 (citation omitted).  However, the Commissioner is the ultimate decision-maker and can draw her own conclusions after considering the data that the treating physicians provide.  *See id.* (quotation omitted).  Therefore, the treating physician's disability evaluation is not determinative because, where the record also contains medical source opinions that are inconsistent or where the treating physician's evaluation has internal inconsistencies, the Commissioner and ALJ must make their determination based on the totality of the evidence.  *See id.* (citations omitted).

As Magistrate Judge Peebles noted, ALJ Zolezzi's RFC assessment did not sharply

-11-

conflict with Dr. Hargraves' RFC assessment.  However, Dr. Hargraves' partially rejected evaluation contained some inconsistencies with his treatment notes and conflicted with other clinical evidence.  Viewing the totality of the evidence, the Court finds that substantial evidence exists to support the ALJ's determination.  Agency consultants Dr. MacLeod and Dr. Kasprzak both reported that Plaintiff had a greater capacity for work activities.  Dr. MacLeod found that she could stand and/or walk for a total of approximately six hours in an eight-hour work day and noted that MRI results and other testing did not support her subjective pain complaints.  Dr. Kasprzak reported that Plaintiff indicated that she was capable of performing a variety of daily activities, and he found normal ranges of motion, no loss of strength, and no muscle atrophy or sensory loss.  Furthermore, Dr. Grzyb's independent opinion was consistent.

Dr. Schroyer stated that "plaintiff's 'injuries have resulted in a moderate to marked degree of disability and that this disability is permanent,' going on to state 'I do not see how she could undertake any type of gainful employment.'"  *See* Dkt. No. 13 at 22 (citation omitted).  As noted above, substantial medical source evidence contradicts these conclusions.  Moreover, these assertions on the ultimate issue of Plaintiff's disability are not entitled to deference because the Commissioner is charged with that task.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citations omitted).

Concerning Dr. Mulholland, Magistrate Judge Peebles correctly stated that his opinions are not subject to the treating physician rule because he is a chiropractor and, therefore, not an "'acceptable medical source'" according to the applicable regulations.  *See Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995) (footnotes omitted).  Therefore, the ALJ had discretion to determine the weight to afford Dr. Mulholland's opinion.  *See id.* at 314 (footnote omitted).

Moreover, Dr. Mulholland's letter "distinctly lack[ed] any specifics regarding objectively verifiable limitations associated with plaintiff's chronic back condition." *See* Dkt. No. 13 at 23; Administrative Transcript at 207-14.

Regarding Dr. Whalen, the Court notes that Plaintiff did not raise this issue before Magistrate Judge Peebles. In addition, Dr. Whalen's evaluation contains internal consistencies. Although Dr. Whalen reported that Plaintiff could sit for one hour, stand for one half-hour, and walk for one half-hour and that she was "quite limited," he also noted that she was "a healthy appearing woman in no apparent distress," with a good range of motion, some tenderness, and a normal gait and heel-to-toe walk bilaterally. Moreover, finding that "her symptoms seem to be manageable for her,'" Dr. Whalen recommended a conservative course of treatment. Finally, as noted above, substantial evidence exists to support the ALJ's determination.

Accordingly, the Court denies Plaintiff's second objection.

### 3. Objection 3: Plaintiff's testimony

Plaintiff asserts that Magistrate Judge Peebles failed to give her testimony the appropriate weight. She states that he did not accept her testimony concerning her pain, depression, limitations in sitting, standing, and walking, spasms, side effects from Hydrocodone, and a sleep disorder. Moreover, Plaintiff contends that Magistrate Judge Peebles did not set forth reasons for not accepting her testimony with sufficient specificity. Finally, Plaintiff asserts that her testimony was supported by the medical reports of her treating physicians and that the ALJ also failed to credit her testimony.

A reviewing court's role is merely to determine whether substantial evidence supports the ALJ's decision to discount a claimant's subjective complaints.  *See Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quotation and other citations omitted).

Substantial evidence supports ALJ Zolezzi's decision to reject Plaintiff's subjective complaints.  Medical evidence supports the fact that Plaintiff lacked muscle atrophy, sensory changes, or muscle weakness.  Moreover, the ALJ considered Plaintiff's minimal treatment prior to her disability hearing.  He also noted Plaintiff's testimony about her ability to perform daily activities including cooking, housework, stair-climbing, vacuuming, shopping, and laundry. Finally, Plaintiff also stated at various times that her pain was improving, that the pain commenced or became aggravated with exercise, intercourse, or heavy lifting, and that the pain was tolerable with restrictions on activity.  Magistrate Judge Peebles noted these findings in his Report and Recommendation.  *See* Dkt. No. 13 at 24-28.  Accordingly, the Court denies Plaintiff's third objection.

### 4.  *Objection 4: considering Plaintiff's conditions in combination*

Plaintiff asserts that the ALJ should have considered her disabilities in combination to determine the severity of her impairment.  *See* Dkt. No. 14 at 4 (citing *Dixon v. Shalala*, 54 F.3d 1019 (2d Cir. 1995)).  In addition, Plaintiff asserts that the ALJ is required to consider the claimant's nonexertional limitations and seems to claim that her subjective complaints of pain

establish such limitations.  *See id.* (citing *Jacob v. Shalala*, 872 F. Supp. 1166 (E.D.N.Y. 1994)).

Therefore, Plaintiff concludes that Magistrate Judge Peebles erred in his recommendation

because Plaintiff's spinal disease was well-documented and Plaintiff has testified that she cannot

work due to her pain.

As noted above, the Court denies Plaintiff's objection to the ALJ's rejection of her

subjective complaints of pain because substantial evidence supports the ALJ's decision in this

respect.  The Court also noted above that it denies Plaintiff's objection concerning the ALJ's

handling of evidence from her treating physicians.  Moreover, Plaintiff is incorrect that the ALJ

did not consider her conditions in combination.  ALJ Zolezzi considered Plaintiff's physical

injuries, her symptoms (including complaints of debilitating pain), her treatment, and the effects

of such treatment.  Accordingly, the Court denies Plaintiff's fourth objection.

### 5.  *Objection 5: substantial evidence that Plaintiff could work as a receptionist*

Plaintiff asserts that there was a lack of substantial evidence from which the ALJ could

determine that she could perform her past work as a receptionist.  She claims that, as a result of

her pain, she can only sit, stand, or walk for fifteen to twenty minutes.  Moreover, she claims that

she cannot concentrate due to her pain and pain medication.  Finally, she contends that the ALJ

should have consulted a vocational expert because Plaintiff has a nonexertional limitation that

substantially reduces her range of work.  *See* Dkt. No. 14 at 5 (citing *Bapp v. Bowen*, 802 F.2d

601 (2d Cir. 1986)).

Substantial evidence supports the conclusion that Plaintiff could perform her past work as

a receptionist.  For instance, the opinions of agency consultants Dr. MacLeod and Dr. Kasprzak,

noted above, indicate that Plaintiff has a greater capacity to work than she contends.  Moreover,

the ALJ properly rejected Plaintiff's subjective complaints as both contrary to medical evidence

and contrary to some of Plaintiff's own statements.  In addition, Magistrate Judge Peebles

correctly noted the following in finding that Plaintiff has not met her burden to establish the

fourth prong of the disability inquiry:

> In this instance plaintiff contends that because of her pain she is
> unable to sit continuously, as required by the receptionist position.
> As the Second Circuit has noted, however, "[t]he regulations do
> not mandate that all sedentary jobs in the United States require the
> worker to sit without moving for six hours, trapped like a seat-
> belted passenger in the center seat of a transcontinental flight." . . .
> The limitations associated with the pain experienced by the
> plaintiff thus do not necessarily preclude her ability to work in her
> former position as a receptionist.

*See* Dkt. No. 13 at 18-19 (internal quotation omitted).  Insofar as ALJ Zolezzi and Magistrate

Judge Peebles were entitled to reject Plaintiff's subjective complaints of pain, they were also

justified in rejecting her claim of a nonexertional limitation based solely upon these complaints.[5]

Therefore, ALJ Zolezzi was not required to consult a vocational expert.  Accordingly, the Court

denies Plaintiff's fifth objection.


### 6. Objection 6: failure to consider the full medical record

Plaintiff asserts that Magistrate Judge Peebles failed to review or discuss the entire record

_____

[5] The Court addresses Plaintiff's objection about the side effects of her medications in the
context of Objection 7, *infra*.

because he did not review and discuss the medical evidence that supported her position.

Contrary to Plaintiff's assertion, Magistrate Judge Peebles' Report and Recommendation throughly discusses the evidence in this case, including the opinions of Plaintiff's treating physicians.  Moreover, Plaintiff's assertion is illogical because, in her first objection, she argues that the ALJ and Magistrate Judge Peebles incorrectly rejected the treating physicians' opinion; and now, in her seventh objection, she contends that Magistrate Judge Peebles did not discuss or consider these opinions at all.  Accordingly, the Court denies Plaintiff's sixth objection.

### 7.  Objection 7: the side effects of Plaintiff's pain medication

Plaintiff asserts that ALJ Zolezzi and Magistrate Judge Peebles incorrectly failed to consider the side effects of Plaintiff's medication.  Plaintiff contends that these side effects make her drowsy, lightheaded, and unable to focus and concentrate.

The regulations explain that the ALJ will consider other evidence to verify a claimant's pain or other symptoms because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone . . . ."  20 C.F.R. § 404.1529(c)(3).  The regulation states that

> [b]ecause symptoms, such as pain, are subjective and difficult to
> quantify, any symptom-related functional limitations and
> restrictions which you, your treating or non-treating source, or
> other persons report, which can reasonably be accepted as
> consistent with the objective medical evidence and other evidence,
> will be taken into account as explained in paragraph (c)(4) of this
> section . . . . Factors relevant to your symptoms, such as pain,
> which we will consider include: . . . (iv) The type, dosage,
> effectiveness, and side effects of any medication you take or have
> taken to alleviate your pain or other symptoms . . . .

*Id.* Paragraph (c)(4) further elaborates that the ALJ will consider the type and effect of medication, as well as other factors, to the extent that they establish the existence of symptoms and limitations that "can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(c)(4) (2006).

In this case, contrary to Plaintiff's assertion, there is evidence that both ALJ Zolezzi and Magistrate Judge Peebles considered her medications.  *See* Dkt. No. 13 at 5-6; Administrative Transcript at 13.  Moreover, Magistrate Judge Peebles explicitly noted Plaintiff's complaints about the side effects of the medications and noted that she had not established that "[t]he limitations associated with [her] pain . . . necessarily preclude her ability to work in her former position as a receptionist."  *See* Dkt. No. 13 at 5-6, 19.  The ALJ explicitly noted that he had carefully considered Plaintiff's complaints as set forth in 20 C.F.R. § 404.1529, which includes the type, dosage, effectiveness, and side effects of medications.  *See* Administrative Transcript at 13.  In addition, the regulations explain that the type, dosage, and side effects of medication are merely one factor in a multi-factor inquiry and that the factors are only significant to the extent that they are reasonably consistent with objective medical evidence.  *See* 20 C.F.R. § 404.1529(c)(4) (2006).  As noted above, substantial evidence supported the ALJ's decision to discount Plaintiff's subjective complaints because medical source evidence supports the conclusion that Plaintiff had sufficient capacity to perform the essentially sedentary work of a receptionist.  Accordingly, the Court denies Plaintiff's seventh objection.

### 8.  Objection 8: Dr. Hargraves' assessment of Plaintiff's ability to sit

Plaintiff asserts that Magistrate Judge Peebles erred by finding that Dr. Hargraves opined that she could sit for up to six hours in a full work day.  In his report, Dr. Hargraves actually checked the box to indicate that Plaintiff could sit for less than six hours per day.

As noted above, in the background section of his Report and Recommendation, Magistrate Judge Peebles stated that Dr. Hargraves' June 2001 evaluation concluded that Plaintiff could "sit for up to six hours in a full work day."  *See* Dkt. No. 13 at 7.  However, in the Report and Recommendation's discussion section, Magistrate Judge Peebles correctly stated Dr. Hargraves' opinion that Plaintiff could "sit less than six hours per day."  *See id.* at 20.  Moreover, this objection does not address the real issue: whether substantial evidence supports the ALJ's conclusion.  The Court finds that substantial evidence exists on the specific issue of Plaintiff being able to sit for up to six hours in a work day.  Dr. MacLeod reported that Plaintiff could sit for six hours in an eight-hour work day, and Plaintiff herself admitted in October 1999 that she could sit indefinitely in the proper chair.  Accordingly, the Court denies Plaintiff's eighth objection.

### 9.  Objection 9: evidence of Plaintiff's disability after March 4, 1999

Plaintiff asserts that there was no evidence to conclude that she was not disabled starting on March 4, 1999.

Contrary to Plaintiff's assertion, almost all of the evidence presented in this case comes from medical examinations that occurred after March 4, 1999.  The sole exception is Plaintiff's

early treatment at the Plattsburgh Health Center immediately after her fall.  Accordingly, the Court denies Plaintiff's ninth objection.


## IV. CONCLUSION

Accordingly, after carefully considering Magistrate Judge Peebles' Report and Recommendation, Plaintiff's objections, the relevant parts of the record, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation, dated February 10, 2006, is **ACCEPTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED IN ALL RESPECTS**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED IN ITS ENTIRETY**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendant and close this case.


**IT IS SO ORDERED.**

Frederick J. Scullin, Jr.
Senior United States District Court Judge

Dated: May 11, 2007
Syracuse, New York

-20-